UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

Mary Bakko and Dawn White,

    Plaintiffs,

v.

**MEMORANDUM OPINION AND ORDER**
Civil No. 18-1566 (MJD/LIB)

Quicken Loans, Inc.,

    Defendant.

---

    Andrew C. Walker and Paul H. Weig, Walker & Walker Law Offices, PLLC, Counsel for Plaintiffs.

    Lousene Hoppe, Fredrikson & Byron, P.A. and Thomas N. Abbott, Perkins Coie LLP, Counsel for Defendant.

---

This matter is before the Court on Defendant's motion to dismiss the Amended Complaint pursuant to Fed. R. Civ. P. 12(b)(6).

## I. Amended Complaint

Plaintiffs Bakko and White each filed for Chapter 7 bankruptcy – Bakko in September 2017 and White in April 2018. (Am. Comp. ¶¶ 9, 10.) At the time of Bakko's bankruptcy filing, both plaintiffs owed a mortgage loan secured by their homestead in Ramsey County, and serviced by Defendant Quicken Loans, Inc. ("Quicken"). (Id. ¶ 11.)

1

Plaintiff Bakko signed a reaffirmation agreement for the mortgage loan in bankruptcy. (Id. ¶ 12.) Following the filing of this agreement, Quicken charged $125 in attorney's fees to Plaintiffs' loan for what it described as "Bankruptcy – Reaffirmation Agreement." (Id. ¶ 13.)

Plaintiffs claim that a reaffirmation agreement is a simple document that is routinely filed in bankruptcy cases, and that such form is available online from the United States Bankruptcy Court website. (Id. ¶¶ 14, 15.) There is no filing fee for such document. (Id. ¶ 16.) Plaintiffs further claim that the reaffirmation form filed in this case could not reasonably have taken an attorney between 15 minutes and half an hour to complete – which would represent $125 in attorney's fees – therefore the fee charged to Plaintiffs was unreasonable. (Id. ¶¶ 18-20.)

Prior to filing suit, counsel for the parties exchanged correspondence as to whether Quicken could charge attorney's fees for the preparation of the reaffirmation agreement. (Id. ¶¶ 23, 24.) Because the parties were not able to reach an agreement on this issue, Plaintiffs filed the instant action.

In Count I, Plaintiffs claim that Quicken violated the Real Estate Settlement Procedures Act ("RESPA"), 12 U.S.C. § 2605, by not removing and refunding the

$125 attorney's fee charge for the completion of the reaffirmation agreement. (Id. ¶ 32.)

In Count II, Plaintiffs claim that Quicken has engaged in a pattern or practice of charging unauthorized unreasonable fees by charging other consumers attorney's fees for the preparation of a reaffirmation agreement that was not negotiated or included changes to any information which would ordinarily be provided by a loan servicer. (Id. ¶ 38.) RESPA provides for additional damages in the case of a pattern or practice of noncompliance with the requirements of § 2605. (Id. ¶ 43.)

In Count III, Plaintiffs claim that Quicken breached the terms of the mortgage and note by charging Plaintiffs unreasonable fees in a legal proceeding that might significantly affect Quicken's interest in the property and/or rights under the contract. (Id. ¶¶ 46-48.) Not only was the attorney's fee unreasonable, Bakko's chapter 7 bankruptcy proceeding did not modify the secured status of the mortgage and was therefore not a circumstance that might significantly affect Quicken's interest or rights under the contract. (Id. ¶¶ 48,49.)

In Count IV, Plaintiffs claim that Quicken violated Minn. Stat. § 58.13 by: failing to perform in accordance with the terms of the mortgage; charging an

3

unauthorized and unreasonable attorney's fee; violating RESPA; and making false or misleading representations when servicing the loan.

## II.  Standard Motion to Dismiss

Under Rule 12(b)(6) of the Federal Rules of Civil Procedure, a party may move the Court to dismiss a claim if, on the pleadings, a party has failed to state a claim upon which relief may be granted.  In reviewing a motion to dismiss, the Court takes all facts alleged in the complaint to be true.  Zutz v. Nelson, 601 F.3d 842, 848 (8th Cir. 2010).

> To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face.  Thus, although a complaint need not include detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do.

Id. (citations omitted).

## III.  Analysis

### A.  Violation of RESPA – Counts I and II

RESPA provides that loan servicers have certain duties to borrowers, one of which is to provide a written response to a qualified written request ("QWR") within 5 days, unless the action requested is taken within such period.  12 U.S.C. § 2605(e)(1)(A).  A QWR is defined as "a written correspondence . . . that--

**(i)** includes, or otherwise enables the servicer to identify the name and account of the borrower; and **(ii)** includes a statement of the reasons for the belief of the borrower, to the extent applicable, that the account is in error or provides sufficient detail to the servicer regarding other information sought by the borrower." 12 U.S.C. § 2605 (e)(1)(B).

### 1. Whether March 6, 2018 Letter is a QWR

Plaintiffs claim that after they learned of the attorney's fee charged to their mortgage loan, they mailed a QWR to Quicken, dated March 6, 2018, in which they challenged Quicken's right to charge attorney's fees to the borrowers for the preparation of the reaffirmation agreement. (Am. Comp. ¶ 23.) Specifically, the QWR included a portion described as "Servicing Errors" which provided "1. Quicken Loans has wrongly charged attorney's fees to the borrowers for the preparation of a reaffirmation agreement. This constitutes the imposition of a fee or other charges that the servicer lacks a reasonable basis to impose upon the borrower. 12 CFR 1024.35(b)(5)." (Id., Ex. B.) Thereafter, Quicken failed to make appropriate corrections in the borrower's account in response to their QWR as required under 12 U.S.C. § 2605(e)(2). (Id. ¶ 32.) Plaintiffs further claim Quicken has repeatedly charged similar fees to other debtors. (Id. ¶ 38.)

5

Quicken asserts the RESPA claim fails because the March 6, 2018 letter is not a QWR because Plaintiffs did not explain why they believed the $125 attorney's fee charge was wrongly assessed.  Merely parroting the regulation definition of "error" is not sufficient because it fails to provide sufficient information from which to base its investigation and response.  See Ovsepyan v. OneWest Bank, FSB, Civ. No. 11-8714, 2012 WL 10423213, at * 2 (C.D. Cal. June 14, 2012) (finding that because plaintiff did not list specific reasons in support of her belief that account was in error, the letter did not qualify as a QWR).  If Plaintiffs had provided the reasons for their belief, Quicken asserts it would have addressed those concerns and provided more detail about its decision to hire legal counsel in connection with Bakko's bankruptcy and the reaffirmation agreement.

The Court is not persuaded by this argument.  As Quicken concedes, it responded to Plaintiffs' letter by informing them of the background and circumstances of the fee; that it had retained legal counsel after learning of Plaintiff Bakko's bankruptcy, and that counsel charged $125 to prepare the reaffirmation agreement.  Quicken also informed Plaintiffs of the contractual basis on which it relied to advance the fee on behalf of Plaintiff Bakko.  Quicken

did not articulate how their response would have been substantively different had Plaintiffs provided a more detailed explanation for their position that they were wrongly charged the attorney's fee.

Next, Quicken argues that the RESPA claim fails because the March 6, 2018 letter does not raise an issue regarding the servicing of the mortgage. RESPA defines "servicing" as "receiving any scheduled periodic payments from a borrower pursuant to the terms of any loan, including amounts for escrow accounts described in section 2609 of this title, and making the payments of principal and interest and such other payments with respect to the amounts received from the borrower as may be required pursuant to the terms of the loan." 12 U.S.C.A. § 2605 (i)(3). Quicken asserts that because the attorney's fee charge is neither a "periodic payment" nor an amount identified in the mortgage, the letter exceeds the scope of RESPA by seeking information related to third party fees. See Fleming v. U.S. Bank Nat. Ass'n, 2015 WL 505758 (D. Minn. Feb. 6, 2015) (finding plaintiff's letter exceeded the scope of RESPA "by seeking, in part, information related to insurance, property taxes, third party fees, property inspection and appraisals, and pooling and service agreements.")

Quicken further asserts that whether or not the attorney's fee charged was reasonable does not come within the definition of "servicing" for purposes of RESPA. The fee arose in connection with Bakko's bankruptcy and the completion of a reaffirmation agreement; not application of her periodic payments on the account. A reaffirmation resembles a loan modification agreement more than any periodic payment. As fees and costs associated with a loan modification are not servicing for purposes of RESPA, see <u>Sutton v. CitiMortgage, Inc.</u>, 228 F. Supp.3d 254, 266 (S.D.N.Y. 2017), fees and costs associated with reaffirmation agreements are not servicing either.

The Court is not persuaded by these arguments either. First, <u>Sutton</u> does not hold that fees and costs associated with reaffirmation agreements do not fall within the definition of servicer. Second, as Plaintiffs note, the definition of servicing is receiving periodic payments from the borrower, and "making the payments of principal and interest and *such other payments* with respect to the amounts received from the borrower as may be required pursuant to the terms of the loan." 12 U.S.C. § 2605 (i)(3) (emphasis added). The regulations clarify that "such other payments" includes principal, interest and other amounts to the "owner of the loan or *other third parties*." 12 C.F.R. § 1024.2 (emphasis added).

Here, Quicken included the attorney's fee charge in the monthly mortgage billing statement sent to Plaintiffs. (Am. Comp., Ex. A.) Thus, application of amounts paid by Plaintiffs to that fee would fall squarely within the plain meaning of the term "servicing" as defined in RESPA.

### 2. Actual Damages

To prove a claim under RESPA, a plaintiff must show that a loan servicer's failure to comply with RESPA caused him/her harm. See Wirtz v. Specialized Loan Serv., LLC, 886 F.3d 713, 718 (8th Cir. 2018) reh'g denied (May 29, 2018). As applied in this case, Quicken asserts Plaintiffs have failed to show that they suffered an injury as a result of Quicken's failure to respond to their QWR. Instead, they are trying to bootstrap the contention that the $125 fee was wrongfully charged to their damages claim under RESPA. However, the $125 fee was the result of the attorney's fee incurred for the retention of counsel and the preparation of the reaffirmation agreement, and it existed prior to Plaintiffs sending their QWR.

Plaintiffs allege they were damaged when Quicken failed to correct its error, and not charge them the $125 fee for the completion of the reaffirmation agreement. At this stage of the proceedings, the Court finds that Plaintiffs have

sufficiently alleged damages under RESPA, and the issue of whether the fee charged was reasonable should be determined once discovery is complete.

### 3. Statutory Damages

Under RESPA, a plaintiff may be entitled to statutory damages if the plaintiff can show a pattern or practice of noncompliance with the requirements of RESPA. 12 U.S.C. § 2605(f)(1)(B). "To show a pattern or practice, a plaintiff must show that noncompliance with the statute 'was the company's standard operating procedure – the regular rather than the unusual practice.'" Wirtz, 886 F.3d at 720.

Quicken argues that Plaintiffs have failed to allege that Quicken engaged in a pattern or practice of noncompliance with RESPA. The Court disagrees.

In paragraph 38 of the Amended Complaint, Plaintiffs allege:

Plaintiffs' counsel represents a large number of consumers filing for bankruptcy protection, among those clients Plaintiffs' counsel has identified at least four other instances in which Quicken Loans, Inc. has assessed a fee for hiring an attorney to prepare a reaffirmation agreement which did not involve any negotiation or changes to any information which would ordinarily be provided b a loan servicer to a party filling in the standard form provided by the bankruptcy court and used in the bankruptcy case.

Plaintiffs further allege that "Servicer routinely charges borrowers unauthorized and unreasonable fees for the preparation of reaffirmation

10

agreements." (Am. Comp. ¶ 40.) "Upon information and belief, Servicer routinely refuses to correct the unauthorized unreasonable fees when borrowers challenge the fees by QWR or Notice of Error pursuant to 12 U.S. § 2605(e)." (Id. ¶ 41.)

To determine whether such allegations sufficiently allege a pattern or practice claim under RESPA, the Court recognizes that other courts have found that allegations based on "information and belief" or conclusory allegations that the defendant engaged in a pattern or practice of noncompliance with RESPA are insufficient to establish a pattern or practice under RESPA. See Giordano v. MGC Mortg., Inc., 160 F. Supp.3d 778, 785 (D. N.J. 2016) (finding that allegations based on information and belief not sufficient to plead a pattern or practice under RESPA); Sutton, 228 F Supp.3d at 276 (finding conclusory allegations concerning defendant's business practices not sufficient to state claim of pattern or practice of RESPA violations); Gorbaty v. Wells Fargo Bank, N.A., 2012 WL 1372260, at * 5 (E.D.N.Y. April 18, 2012) (finding that "pattern or practice" means a standard or routine way of doing things, and that alleging four examples of RESPA violations does not qualify as a standard or routine way of doing things.)

11

While the allegations based on "information and belief" are insufficient to state a claim, the Court finds that Plaintiffs have sufficiently alleged a pattern and practice claim under RESPA based on the allegations that counsel has already identified at least four other instances in which Quicken has assessed an attorney's fee, as was done in this case. Discovery may uncover additional cases. Accordingly, at this stage of the proceeding, the Court finds Plaintiffs have properly alleged a pattern and practice claim under RESPA.

**B.  Breach of Contract – Count III**

Plaintiffs assert that Quicken is bound by the mortgage and note attached to their homestead, and that under those contracts, Plaintiffs are only obligated to pay reasonable attorney's fees if there is a legal proceeding that might significantly affect Quicken's interest in the property and/or rights under the contracts. (Am. Comp. ¶¶ 46, 47.) Plaintiffs allege the $125 fee charged for the reaffirmation agreement in Bakko's bankruptcy proceeding was not reasonable for a number of reasons: the form reaffirmation agreement was not modified in any material way; the information added to the form provided by the court was of a type that is ordinarily and necessarily supplied by loan servicers; the attorney added nothing in the way of analysis, negotiation or expertise to the

information provided by Quicken; and Plaintiff Bakko stated her intention to enter into a reaffirmation agreement at the time of filing and agreed to the reaffirmation agreement as proposed by Quicken, without negotiation. (Id. ¶ 48.)

Plaintiffs further allege that Plaintiff Bakkos' chapter 7 bankruptcy, which could not modify the secured status of the mortgage, was not a circumstance that might affect Quicken's interests or rights under the contracts. (Id. ¶ 49.) Plaintiffs thus allege that by charging the $125 fee, Quicken breached the mortgage and note contracts. (Id. ¶ 50.)

Quicken argues that Plaintiffs have failed to state a claim for breach of contract because it had a right to hire counsel when Bakko filed for bankruptcy to protect its interest in the property under the Mortgage and because the attorney's fee charge was reasonable. However, whether Quicken needed to hire counsel to protect its interests in the property or whether the fee charged was reasonable are questions of fact that are not decided on a Rule 12(b)(6) motion. Based on the allegations in the Amended Complaint, the Court thus finds that Plaintiffs have stated a claim of breach of contract.

## C. Violation of Minn. Stat. § 58 – Count IV

Minn. Stat. § 58 regulates the actions of loan servicers like Quicken by prohibiting certain business practices. Plaintiffs allege that Quicken violated the following prohibitions set forth in Minn. Stat. § 58.13: failing to perform in accordance with the written agreement between the parties in violation of § 58.13 subdiv. 1(a)(5); charging an unauthorized, unreasonable fee in violation of § 58.13 subdiv. 1(a)(6); violating RESPA in violation of § 58.13 subdiv. 1(a)(8); and making a false or misleading representation when servicing its loan in violation of § 58.13 subdiv. 1(a)(9).

The statute further provides that a borrower injured by a violation of the standards set forth in § 58.13 has a right of action and may be entitled to actual, incidental and consequential damages, statutory damages, punitive damages and costs and attorney's fees. Minn. Stat. 58.18, subdiv. 1. In addition, the statute provides that the borrower "also may bring an action under section 8.31." Minn. Stat. § 58.18, subdiv. 2.

Plaintiffs allege that thousands of people file for bankruptcy each year, and that a significant number of them will sign a reaffirmation agreement and that most mortgage servicers do not retain attorneys for those agreements. (Id. ¶ 53.)

Further, Plaintiffs allege that very few reaffirmation agreements are modified from the form provided by the court and few contain any information other than what is provided by the servicer to the attorney and that few reflect any exercise of legal judgment, negotiation or analysis. (Id.) Finally, Plaintiffs allege this action will benefit Minnesotans by establishing that it is not reasonable for Quicken to pass along to the consumer the cost of its decision to hire an attorney to fill in a form which does not require legal expertise. (Id.)

Quicken argues any claim under Minn. Stat. § 58.13 fails for several reasons. First, this claim is derivative of Plaintiffs' claims under RESPA and for breach of contract and should therefore be dismissed for the same reasons as the RESPA and breach of contract claims. Quicken further argues claim fails to plead fraud with particularity and that Plaintiffs have failed to sufficiently allege a public interest to sustain their claim.

In response, Plaintiffs assert they have not requested injunctive relief or other remedies which would bring their claims under the ambit of the private attorney general statute, Minn. Stat. 8.31. Next, Plaintiffs assert that Minn. Stat. 58.13, subdiv. 9 is the only prohibition subject to the heightened pleading standard required under Fed. R. Civ. P. 9(b), and that such requirements have

been met in the Amended Complaint. Plaintiffs have alleged that Quicken charged Bakko an unreasonable attorney's fees following her bankruptcy, and falsely claimed that such fees were authorized under the terms of the loan in its March 12, 2018 response to Bakko's QWR.

Because the allegations must be construed in the light most favorable to Plaintiffs at this stage of the proceedings, the Court will allow this claim to go forward.

IT IS HEREBY ORDERED that Defendant Quicken Loans, Inc.'s Motion to Dismiss [Doc. No. 19] is **DENIED**.

Date: December 11, 2018

s/ Michael J. Davis<br>Michael J. Davis<br>United States District Court